**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK**

---

JASON W. KARR,

                                  Plaintiff,                     17-CV-0435Sr

v.

NANCY A. BERRYHILL,
**Acting Commissioner of Social Security,**

                                  Defendant.

---

## DECISION AND ORDER

As set forth In the Standing Order of the Court regarding Social Security Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have consented to the assignment of this case to the undersigned to conduct all proceedings, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g). Dkt. #18.

## BACKGROUND

Plaintiff's application for disability insurance benefits and supplemental security income ("SSI"),was granted on November 21, 1991, with a disability onset date of December 31, 1988, when plaintiff was 19. Dkt. #8, p.129. Continuing disability medical reviews dated January 16, 1993 and March 28, 1998 determined that plaintiff continued to be disabled due to attention deficit hyperactivity disorder ("ADHD"), and personality disorder with narcissistic and dependent features. Dkt. #8, pp.129 & 141. During this time period, plaintiff "worked at a variety of jobs" and exhausted his trial work period. Dkt. #8, p.141.

On September 9, 2002, the Social Security Administration ("SSA"), determined that plaintiff's disability had ceased, with benefits terminating as of November of 2002. Dkt. #8, p.129. On appeal, by decision dated March 30, 2006, Administrative Law Judge ("ALJ"), Nancy Lee Gregg determined that plaintiff's severe impairments were well controlled with Ritalin such that plaintiff was able to perform work at all exertional levels and that he was able to understand, remember, follow, carry out and complete simple, detailed and some complex tasks independently in an occupation that did not require significant interaction with the general public. Dkt. #8, p.142. As a result, the ALJ found plaintiff capable of performing his past relevant work as a commercial and industrial cleaner, store laborer and shipping and receiving clerk. Dkt. #8, pp.139-40.

Plaintiff filed an application for SSI on January 5, 2010, alleging disability beginning January 10, 2003, due to ADHD, learning disabilities and mental health problems. Dkt. 8, pp.387 & 481. A hearing was held before ALJ Brian Kane on March 1, 2012, at which plaintiff, represented by counsel, and an impartial vocational expert, Julie Andrews, appeared and testified. Dkt. #8, pp.41-95. Plaintiff testified that he wanted to work, and had attempted numerous jobs, but "had difficulties with everything [he] tried." Dkt. #8, p.58. He explained that sometimes he had difficulty doing the job, sometimes he lost interest, and sometimes he didn't do it right. Dkt. #8, p.58. He testified that he didn't know what he could do, speculating that he needed to "find a job where I could either be on my own or left alone, on my own, or given a set of instructions that I can follow and go with." Dkt. #8, p.58. Plaintiff further testified that

> I've done multiple jobs, and they last so long, or something
> happens. Or I get in trouble, or I just walk off a job - lack of
> interest - or issues with other employees, or things like that.

Dkt. #8, p.88. He also noted another job where his "attention span caused some . . . significant damage" to the truck as he was delivering a mobile storage unit. Dkt. #8, p.56.

ALJ Kane rendered a determination that plaintiff was not disabled on April 24, 2012 (Dkt. #8, pp.149-157), but the Appeals Council remanded the matter for further consideration of plaintiff's residual functional capacity ("RFC"), in light of the ALJ's determination that plaintiff had moderate limitations in concentration, persistence or pace and should avoid more than occasional interaction with co-workers and the general public. Dkt. #8, p.163. More specifically, the Appeals Council determined that "the assessed residual functional capacity assessment does not adequately account for the claimant's mental impairments because it has no limitations corresponding to the moderate limitations in concentration, persistence or pace." Dkt. #8, p.163.

A second hearing was held before ALJ Kane on August 21, 2015, at which plaintiff, represented by counsel, and an impartial vocational expert, Dawn Blythe, testified. Dkt. #8, pp.99-125. Plaintiff testified regarding his job delivering 164 Pennysavers, stating that he incorporates the inserts into the pennysavers and delivers them weekly on foot, but had "messed it up a few times" and had to go back and fix it. Dkt. #8, pp.105 & 120. He noted that he was often distracted during this process and divided the task over the course of a day. Dkt. #8, p.123. The vocational expert

recognized that plaintiff had "a lot of like just few-week jobs or a couple-month jobs." Dkt. #8, p.109. Plaintiff agreed that he has had more jobs than he could count. Dkt. #8, p.110. The ALJ asked the vocation expert if an individual with plaintiff's age, education and work experience who was limited to semi-skilled work would be able to engage in his past relevant work. Dkt. #8, p.111. The vocational expert answered that such an individual could perform plaintiff's past relevant work as a laborer, cleaner or cashier. Dkt. #8, p.111. Plaintiff's attorney asked the vocational expert if her opinion would change if plaintiff was "off task 20 percent of the day." Dkt. #8, p.111. The vocational expert agreed that plaintiff would not be able to sustain any employment if he was off task 20 percent of the day. Dkt. #8, p.111.

ALJ Kane rendered a determination that plaintiff was not disabled on March 7, 2016. Dkt. #8, pp.26-30. Specifically, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) plaintiff had not engaged in substantial gainful activity since applying for benefits on January 5, 2010; (2) plaintiff's ADHD constituted a severe impairment; (3) plaintiff's impairment did not meet or equal any listed impairment in that his activities of daily living were not restricted and he had only mild difficulties with social functioning, moderate difficulties in concentration, persistence or pace, and no episodes of decompensation of extended duration; (4) plaintiff retained the capacity to perform a full range of semi-skilled or unskilled work at all exertional levels; and (5) plaintiff was therefore capable of performing his past relevant work as a commercial cleaner and cashier. Dkt. #8, pp.28-33.

The Appeals Council denied plaintiff's request for review on March 21, 2017. Dkt. #8, p.6.

On May 18, plaintiff commenced this action seeking review of the Commissioner of Social Security's ("Commissioner's"), final decision. Dkt. #1.

**DISCUSSION AND ANALYSIS**

Plaintiff argues that the ALJ's RFC failed to account for the fact that plaintiff's treatment providers "consistently observed plaintiff as being easily distracted, lacked attention and concentration, memory, impulsive, scattered and difficult to follow, diminished judgment and insight, unable to work at consistent pace, and difficulty with others." Dkt. #15-1, p.27. Moreover, plaintiff argues that his history demonstrates an inability to sustain full-time competitive work on a regular and continuous basis. Dkt. #15-1, p.29.

The Commissioner argues that the ALJ properly weighed the opinions of plaintiff's treating sources to determine that plaintiff retained the RFC to perform his past relevant work. Dkt. #16-1, pp.20-27.

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as

a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 404.1505(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1520(a). At step one, the claimant must demonstrate that he is not engaging in substantial gainful activity. 20 C.F.R. § 404.1520(b). At step two, the claimant must demonstrate that he has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 404.1520(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 404.1520(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has

sufficient residual functional capacity ("RFC"), for the claimant to return to past relevant work. 20 C.F.R. § 404.1520(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education and work experience. 20 C.F.R. § 404.1520(g).

The ALJ's determination that plaintiff is capable of returning to his past relevant work is not supported by substantial evidence because it fails to account for the ALJ's determination that plaintiff has moderate difficulties in concentration, persistence or pace.

In the instant case, despite being remanded by the Appeals Council for consideration of how plaintiff's RFC is affected by his mental impairments with respect to concentration, persistence or pace (Dkt. #8, p.163), the ALJ's assessment of plaintiff's RFC fails to address the affect of plaintiff's moderate difficulties in concentration, persistence or pace upon his ability to perform his past relevant work or engage in other substantial gainful activity. When making findings about a plaintiff's RFC, an ALJ may not avoid a detailed assessment regarding the degree of functional limitation resulting from a mental impairment by simply stating that the claimant can perform simple, unskilled work. *Karabinas v. Colvin*, 16 F. Supp.3d 206, 215 (W.D.N.Y. 2014) (collecting cases). Moreover, an ALJ's hypothetical to a vocational expert "should explicitly incorporate any limitations in concentration, persistence and pace." *McIntyre v. Colvin*, 758 F.3d 146, 152 (2d Cir. 2014). "If a hypothetical question does not include all

of a claimant's impairments, limitations and restrictions, or is otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion of no disability." *Kuleszo v. Barnhart*, 232 F. Supp.2d 44, 57 (W.D.N.Y. 2002). The failure to incorporate such limitations is only harmless error if: (1) medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, and the challenged hypothetical is limited to include only unskilled work; or (2) the hypothetical otherwise implicitly accounted for a claimant's limitations in concentration, persistence and pace. *McIntyre*, 758 F.3d at 152.

As the ALJ determined that plaintiff could perform semi-skilled work and the ALJ's only question to the vocational expert was whether an individual with plaintiff's age, education and work experience who was limited to semi-skilled work would be able to engage in his past relevant work (Dkt. #8, p.111), the hypothetical cannot be considered harmless error. In contrast, the question posed by plaintiff's attorney, *to wit*, whether plaintiff would be able to sustain employment if he was off task 20 percent of the day, was based upon assumptions about plaintiff's ability to concentrate which is amply supported by the medical evidence. For example:

● In 2009, Dr. Patil opined that plaintiff was moderately limited in his ability to maintain concentration and interact appropriately with others and very limited in his ability to function at a consistent pace in a work setting (Dkt. #8, p.619);

● In 2010 Dr. Patil opined that plaintiff was moderately limited in his ability to maintain concentration, make simple decisions, interact appropriately with others,

maintain socially appropriate behavior and function in a work setting at a consistent pace (Dkt. #8, pp.621, 623, 626);

● In 2011, Licensed Clinical Social Worker ("LCSW"),[1] Paula Callahan opined that plaintiff was moderately limited in his ability to understand and remember instructions, make simple decisions, interact appropriately with others and maintain socially appropriate behavior and very limited in his ability to maintain concentration and function at a consistent pace in a work setting (Dkt. #8, p.618);

● In 2012, Ms. Callahan opined that plaintiff was moderately limited in his ability to understand and remember instructions, interact appropriately with others and maintain socially appropriate behavior and very limited in his ability to maintain concentration, noting that plaintiff was easily distracted, gets easily frustrated and has problems with authority figures (Dkt. #8, p.628);

● In 2013 Dr. Racaniello observed that plaintiff had "a tendency to go off on tangents" and was "difficult to follow" at times (Dkt. #8, p.750);

● In 2014, Dr. Prasad observed that plaintiff "rambled;" "talks with some mannerism and shows some looseness of association" (Dkt. #8, p.759);

● In 2014, Dr. Ortega opined that plaintiff was

> hard to follow. He gets easily scattered in one to one. Keeping an intelligent conversation with him is usually difficult due to the inability to stay on one topic. . . . He gets easily unfocused.

(Dkt. #8, p.767);

---

[1] Although licensed clinical social workers are not acceptable medical sources entitled to controlling weight, the ALJ may not disregard their opinion solely on that basis, but must consider the treatment relationship, length and frequency of examinations, the evidence supporting the opinion and its consistency with the record as a whole in deciding the amount of weight to give such opinions. *Martino v. Commissioner*, __ F.Supp.3d __, 17-CV-1071, 2018 WL 5118318, at *8 (W.D.N.Y. Oct. 19, 2018).

● In 2015, Licensed Master Social Worker Diane Porcelli, plaintiff's Medicaid Service Coordinator for approximately nine years, opined that plaintiff

> is very disorganized in his thinking and behavior. Unable to maintain focus when conversing, Jason usually switches from topic to topic quickly and within a matter of a few minutes. While he is articulate and appears to have many strengths, his thought process is highly scattered. It is doubtful that he would be able to concentrate on one task or be at all productive in a structured environment. He has much difficulty in explaining things since he changes topics so quickly and must be constantly redirected back to the original topic, which he believes he has already dealt with adequately. In the time that I have know Jason he has been unable to fully recount a story or situation he was involved in without significant redirection during the conversation. It is easy for the listener to get lost and confused when listening to him. Jason is also impulsive and easily distracted by anything that is going on around him. He seems to be preoccupied with everything that is external to him and verbalizes such in any one conversation.

(Dkt. #8, pp.662-63); and

● In 2015, Dr. Ortega noted that plaintiff

> is still taking his Ritalin . . . He is still scattered and unfocused. He is redundant and perseverative. I don't see any depression or anxiety, at least no more than usual. I don't see any mania. He is in full reality contact. He needs a lot of repetition and redirection. I tend to believe he does have ADHD which keeps him from focusing or understanding input given, as it seems to take a while.

Dkt. #8, p.790. Moreover, a consultative psychiatric evaluation by Dr. Lin on April 28, 2015 observed that plaintiff "[a]ppeared to be moderately impaired due to distractibility" and "appeared to have significant difficulty concentrating during conversations." Dkt. #8, p.715.

"Where the existing record contains persuasive proof of disability and a remand for further evidentiary proceedings would serve no further purpose, a remand for calculation of benefits is appropriate." *White v. Comm'r*, 302 F. Supp.2d 170, 174 (W.D.N.Y. 2004), *quoting Martinez v. Commi'r*, 262 F. Supp.2d 40, 49 (W.D.N.Y 2003). Such a determination is particularly appropriate where, as here, a matter has already been remanded and the ALJ failed to address the issue identified for reconsideration. *Peach v. Berryhill*, No. 17-CV-201, 2018 WL 4140613, at *5 (W.D.N.Y. Aug. 30, 2018). Given the consistency of multiple professional observations and opinions over a lengthy period of time, "substantial evidence on the record as a whole indicates that [plaintiff] is disabled and entitled to benefits." *Bush v. Shalala*, 94 F.3d 40, 46 (2nd Cir. 1996).

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #15), is granted and the case is remanded for calculation of benefits; and the Commissioner's motion for judgment on the pleadings (Dkt. #16), is denied.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**

**DATED:** **Buffalo, New York**
**December 10, 2018**

                                  **s/ H. Kenneth Schroeder, Jr.**
                                  **H. KENNETH SCHROEDER, JR.**
                                  **United States Magistrate Judge**